Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2004 WL 609377 (D.Del.)

**(Cite as: 2004 WL 609377 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**Howard Lee BOONE**, Jr., Plaintiff,
v.
**Thomas CARROLL**, Rich Porter, Joe Richardson, Jessica Barton, Major Holman, and Capt. Sagers Defendants.
**No. Civ. 03-624-SLR.**

March 26, 2004.

Howard Lee Boone, Delaware Correction Center, Smyrna, Delaware, Plaintiff, pro se.

Richard W. Hubbard, Department of Justice, Wilmington, Delaware, for Defendants.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On July 3, 2003, Howard Lee Boone, a *pro se* plaintiff proceeding in *forma pauperis* ("plaintiff"), filed the present action pursuant to 42 U.S.C. § 1983 against Thomas Carroll, Rich Porter, Joe Richardson, Jessica Barton, Major Holman, and Capt. Sagers (collectively, "defendants"). [FN1] Plaintiff is incarcerated at the Delaware Correctional Center ("DCC"). Plaintiff alleges that prison officials and fellow inmates have threatened his physical safety in retaliation for providing information about contraband distribution within the prison system to the DCC internal affairs division. [FN2] (D.I.1) The court has jurisdiction over the instant suit pursuant to 28 U.S.C. § 1331. Presently before the court are defendants' motion to dismiss, plaintiff's motion for representation by counsel, and plaintiff's motion to amend the previously requested relief. (D.I.11, 20, 21) For the reasons that follow, the court grants defendants' motion to dismiss, denies plaintiff's motion for representation by counsel, and denies plaintiff's motion to amend the previously requested relief.

FN1. At the time of plaintiff's complaint, Thomas Carroll served as the prison warden, Rick Porter and Joe Richardson were lieutenants, Jessica Barton worked as a counselor, Major Holman was the prison security chief, and Capt. Sagers was a secure housing unit captain. (D.I. 2 at 3)

FN2. On September 3, 2003, plaintiff filed a letter with the court emphasizing his concerns for his physical safety. (D.I.6) The court construed this letter as an amended complaint.

II. BACKGROUND

On June 11, 2003, plaintiff tested positive for marijuana drug use. (D.I.2) As a result, plaintiff was transferred to the secure housing unit (SHU) on June 12, 2003. (*Id.*) Defendants Porter and Barton spoke with plaintiff after his transfer. They allegedly encouraged plaintiff to "help himself" and tell them all he knew about illegal contraband distribution within the prison system. (*Id.*) They also allegedly told plaintiff that he would be moved to Gander Hill Prison if he agreed to provide the requested information. Plaintiff agreed and shared what he knew about the intra-prison drug chain at DCC.

On June 17, 2003, plaintiff consented to speak with a representative from the prison internal affairs division regarding drug suppliers. Defendant Richardson interviewed plaintiff in a glass enclosed room in the SHU. Plaintiff told defendant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                   Page 2

Not Reported in F.Supp.2d, 2004 WL 609377 (D.Del.)

**(Cite as: 2004 WL 609377 (D.Del.))**

Richardson that four specific prison officers and a number of particular prisoners supplied illegal contraband (i.e., marijuana and tobacco) to inmates. Plaintiff claims that several prison officers walked by the interview room during the course of this interview and peered in at him through the glass. After seeing the officers, plaintiff told defendant Richardson that he was "very uncomfortable and scared." Defendant Richardson stopped the interview and told plaintiff that he would reschedule it for a later date in defendant Sager's office.

On June 20, 2003, plaintiff completed the interview with defendant Richardson in defendant Sager's office. (*Id.*) Prison officials thereafter initiated the process to transfer plaintiff to Sussex Correctional Center, where plaintiff asked to be moved. (D.I.6)

Since the interview, plaintiff claims that he has received direct and indirect threats to his personal safety from both officers and fellow prisoners. (*Id.*) Nevertheless, plaintiff has not filed a grievance under Inmate Grievance Procedure for the State of Delaware Bureau of Prisons because he contends that he would be exposed to an even greater risk of personal harm. (D.I.2)

III. STANDARD OF REVIEW

*2 Because the defendants have referred to matters outside plaintiff's complaint, defendants' motion to dismiss shall be treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, then the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In other words, the court must grant summary judgment if the party responding to the motion fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Omnipoint Comm. Enters., L.P. v. Newtown Township,* 219 F.3d 240, 242 (3d Cir.2000) (quoting *Celotex,* 477 U.S. at 323).

IV. DISCUSSION

The court agrees with defendants that plaintiff's retaliation claim cannot stand because plaintiff failed to exhaust his administrative remedies prior to filing the instant civil rights action. Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), "no action shall be brought with respect to prison conditions under § 1983 of this title ... by a prisoner confined ... until such administrative remedies as are available are exhausted." The Third Circuit has required a plaintiff to exhaust administrative remedies before filing a civil action, even if the ultimate relief sought is not available through the administrative process. *Nyhuis v. Reno,* 204 F.3d 65, 71 (3d Cir.2000) (stating that the Prison

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.