IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERNEST CRUMP, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 04-328-SLR |
| | ) | |
| STAN TAYLOR, THOMAS CARROLL, | ) | |
| CORRECTIONAL MEDICAL SERVICES, | ) | |
| DAVID DUNNINGTON, MICHAEL | ) | |
| BRYANT, JANE DOE #1, JOHN DOE | ) | |
| #3 and JOHN DOE #4, | ) | |
| | ) | |
| Defendants. | ) | |

---

Ernest Crump, Jr., Delaware Correctional Center, Smyrna, Delaware.  Pro se.

Ophelia M. Waters, Esquire, of the Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants Stan Taylor, Thomas Carroll, David Dunnington, Michael Bryant, Jane Doe #1, John Doe #3 and John Doe #4.

Kevin J. Connors, Esquire, of Marshall, Dennehey, Warner, Coleman & Goggin, of Wilmington, Delaware. Counsel for Defendant Correctional Medical Services.

---

**MEMORANDUM OPINION**

Dated: October 31, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Plaintiff Ernest Crump Jr., is currently incarcerated at the Delaware Correctional Center ("DCC"), Smyrna, Delaware and files this 42 U.S.C. § 1983 ("§ 1983") action alleging violations of his Eighth and Fourteenth Amendment Rights. Currently before the court are the defendants' motions for summary judgment. (D.I. 23, 24) The court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

The plaintiff's claims arise from an incident that occurred on August 29, 2002. Specifically, plaintiff was brought back in custody after attempting to escape from a work release center earlier that day. (D.I. 27) The following morning, plaintiff was transferred to the DCC for processing at inmate receiving. It was at this time plaintiff contends he was left for several hours and eventually offered a plate of food by defendant Correctional Officer David Dunnington ("Dunnington"). (D.I. 2, 7) Plaintiff avers that he turned down the food and asked Dunnington to leave him alone and that they "exchanged more words". (Id.)[1] Plaintiff alleges that, after this conversation, defendant Dunnington told him to disrobe down to his underwear. (Id.) Plaintiff also asserts that defendant Sergeant Michael Bryan

---

[1]Plaintiff makes no mention of what these other words were. However, according to the state defendant's Memorandum of Law which contains the incident report, plaintiff said that he was, "tired of all this" and that "he was going to end it all." (D.I. 27, ex. A)

("Bryan")[2]

> made a call somewhere and had me tranafered (sic) to
> the institutional hospital because apparently Mr.
> Dunnington believed that my previous behavior indicated
> to him that I may harm myself.

(D.I. 7 at 1)

On August 30, 2002, plaintiff was transferred to the

institutional hospital where he claimed he was under the care of

defendant Correctional Medical Services ("CMS")[3].  (D.I. 2, 7)

At this time plaintiff was evaluated for his mental condition by

a staff doctor who determined that plaintiff may be a threat to

himself.  (D.I. 27, ex. B)  After the interview, plaintiff

contends that a female officer (Jane Doe #1) ordered him into the

"RAM ROOM", where she had him disrobe entirely.  (D.I. 2, 7)

Plaintiff claims that the only thing he was given to wear were

two thin sheets of paper towel-like material for clothing.  He

states these garments could not be fastened and left him

continually exposed.  (Id.)  Furthermore, plaintiff avers that

the "RAM ROOM" was extremely spartan with only a "hole in the

ground" for a toilet, no toilet paper, and only the most basic

sleeping conditions.  (Id.)  When plaintiff did question when he

---

[2]The name of Correctional Officer Michael Bryan was
misspelled in the caption of plaintiff's complaint.  (D.I. 27)

[3] CMS has filed a motion to dismiss pursuant to Fed.R.Civ.P
12(b)(6), claiming that it was not responsible for the prison's
medical care after June 30, 2002.  (D.I. 24)  Plaintiff has no
objections to this motion.  (D.I. 28)

would be released from the "RAM ROOM", a Mental Health worker
told him that he would be there until September 5, 2002 because
it was Labor Day weekend and no one with a high enough security
clearance would be available until then.  (Id.)   Plaintiff was
actually released from the "RAM ROOM" on September 3, 2002.
Plaintiff additionally claims that defendants DCC Warden Thomas
Carroll and Commissioner of the DCC Stan Taylor were complicit in
this incident by not offering plaintiff protection from these
alleged violations.  (Id.)  Finally, the plaintiff avers that he
did not file any kind of grievance to this matter because he did
not know this kind of transfer could be contested.  (Id.)

## III.  STANDARD OF REVIEW

Because the parties have referred to matters outside the
pleadings, defendants' motion to dismiss shall be treated as a
motion for summary judgment. See Fed. R. Civ. P. 12(b)(6). A
court shall grant summary judgment only if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The moving party bears the burden of proving that no
genuine issue of material fact exists. See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).
"Facts that could alter the outcome are 'material,' and disputes

3

are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." <u>Horowitz v. Fed. Kemper Life Assurance Co.</u>, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." <u>Pa. Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

IV. DISCUSSION

A. PLRA Claim

The court agrees with the defendants that plaintiff's claim

4

cannot stand because plaintiff has failed to exhaust his administrative remedies prior to filing the instant civil rights action.  Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), "no action shall be brought with respect to prison conditions under §1983 of this title ... by a prisoner confined ... until such administrative remedies as are available are exhausted."  The Third Circuit has required a plaintiff to exhaust administrative remedies before filing a civil action, even if the ultimate relief sought is not available through the administrative process.  Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir.2000) (stating that the Prison Litigation Reform Act precludes a futility exception to its mandatory exhaustion requirement).

In order for § 1997e to apply, however, two requirements must be met.  First, a prisoner's complaint must concern prison conditions.  Prison conditions are defined as conditions with respect to the conditions of confinement.  See 18 U.S.C. § 3626(g)(2).  The Third Circuit has interpreted this language to relate "to the environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein."  Booth v. Churner, 206 F.3d 289, 294 (3d Cir.2000)

Second, the Department of Correction must have an administrative procedure in place to remedy prisoner complaints.

The State of Delaware Department of Correction has an established and comprehensive Inmate Grievance Review System. The Inmate Grievance Review System provides that "[e]very inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed." State of Delaware Department of Correction Procedure Manual, Procedure Number 4.4, section II (revised May 15, 1998). The procedure creates a three-step grievance process with two levels of appeal (Id. at Section V) To exhaust all available administrative remedies, a prisoner must complete all stages of review or take part in the appeals process. The procedure also provides for an emergency grievance, defined as "an issue that would concern matters which under regular time limits would subject the inmate to a substantial risk of personal, physical[,] or psychological harm." (Id. at Section V) Emergency grievances are addressed on an expedited basis. Specifically, the procedure provides in pertinent part:

> Issues that concern substantial risk of personal, physical, or psychological inmate injury shall be addressed immediately by the [w]arden/[w]arden's designee. A copy of the grievance shall be sent to the [inmate grievance chair] upon receipt by the [w]arden/[w]arden's designee. And the [w]arden/[w]arden's designee shall respond within one calender day. Grievant appeals of the [w]arden/[w]arden's [d]esignee's decision will be decided by the [b]ureau [c]hief of [p]risons within one calender day upon receipt of the emergency appeal.

(Id. at Section V)

6

Plaintiff's Eighth Amendment claim is directed to the conditions under which he was held and the services he received during the 5-day span on suicide watch in 2002. As a result, plaintiff is subject to the §1997e exhaustion requirement. However, the plaintiff has failed to avail himself of the administrative remedies that were available to him within the Inmate Grievance Review System. Plaintiff himself admits that he did not file a grievance. (D.I. 2, 7) Plaintiff claims that he did not file a grievance because he was unaware that he could contest transfers (<u>id</u>.); there is evidence to the contrary, however, indicating that plaintiff was at least familiar with the grievance system. (D.I. 27) The court, consequently, concludes that plaintiff has failed to satisfy the requirements of §1997e. Accordingly, the court grants the defendants' summary judgment motions.

### B. Plaintiff's Inadequate Medical Care Claim

Even if the defendant had exhausted all administrative remedies, his claims would still fail under the Eighth Amendment analysis. To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs ." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>accord</u> <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir.1990). Plaintiff must demonstrate: (1) that he had a serious

7

medical need; and (2) that the defendant was aware of this need and was deliberately indifferent to it. See West v. Keve, 571 F.2d 158, 161 (3d Cir.1978); see also Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir.1987). Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. See Estelle, 429 U.S. at 105.

Plaintiff's claim is unlike most claims that fall within this framework. Plaintiff is claiming inadequate medical care because he was placed on suicide watch and was constantly monitored by doctors for a period of 5 days. This is different from the more traditional Eighth Amendment cases where a prisoner claims that he has little or no access to the medical staff. See West v. Keve, 571 F.2d 178 (3d Cir.1978); Williamson v. Brewington Carr, 173 F. Supp.2d 235 (D.Del. 2001).

Nonetheless, plaintiff cannot say that he received inadequate care under these circumstance. A prisoner who is contemplating suicide presents a grave situation; certainly this would be considered a serious medical condition. Moreover, the defendants attempted to protect plaintiff from any possible injury he might cause to himself. Not only is this not reckless or deliberately indifferent, it is directly contrary to that notion. Consequently, plaintiff's Eighth Amendment inadequate medical claim must fail.

**C. Plaintiff's Prison Conditions Claim**

8

Plaintiff's claim that the conditions under which he was confined during the time he was on suicide watch violated the Eighth Amendment also must fail.  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 32 (1993). However, in order to establish an Eighth Amendment violation, a plaintiff must allege that he has endured a sufficiently serious deprivation and that the defendant has acted with deliberate indifference to plaintiff's plight.  Wilson v. Seiter, 501 U.S. 294, 298 (1991). Thus, in order to prove that the conditions of his confinement violate the Eighth Amendment, plaintiff must satisfy a two prong test which is both objective and subjective. Id.

To satisfy the objective prong, plaintiff must allege that he is  "incarcerated under conditions posing a substantial risk of serious harm."  Farmer v. Brennan , 511 U.S. 825, 834 (1994) (citing Helling v. McKinney, 509 U.S. at 35).  Serious harm will be found only when the conditions of confinement "have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise," and "[n]othing so amorphous as 'overall conditions' can rise to the level of [such a violation] when no specific deprivation of a single human need exists.  "Blizzard v. Watson, 892 F.Supp. 587,

598 (D.Del.1995) (citing <u>Wilson v. Seiter</u>, 501 U.S. at 303-304).

Although plaintiff was placed in a room that was undoubtedly spartan, the fact remains that he was on suicide watch.  The "RAM ROOM" is designed to protect those who may be willing to do harm to themselves by removing all potentially dangerous objects. Plaintiff cannot possibly assert that he was seriously harmed by being placed in a room with less accommodations, when it was in fact plaintiff's behavior that led him to be placed in that room. Additionally, although the conditions were less then ideal in plaintiff's opinion, he was there only five days and was not deprived of any basic necessity (such as food or access to a shower).  (D.I. 27, Ex. I.)

Plaintiff would also be unable to meet the subjective prong of this analysis.  As stated previously, the defendants could not have acted with deliberate indifference when they placed the defendant on suicide watch solely for his protection.  Based on this, plaintiff's Eighth Amendment claim for inadequate conditions must fail as well.

**V. CONCLUSION**

For the reasons stated above, the court grants defendants' motion for summary judgement.  An appropriate order shall issue.